**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Paige Nett, | No. CV-21-00286-PHX-JAT |
| Plaintiff, | **ORDER** |
| v. | |
| Commissioner of Social Security Administration, | |
| Defendant. | |

Pending before the Court is Plaintiff Paige Nett's appeal from the Commissioner of the Social Security Administration's ("SSA") denial of social security disability benefits. (Doc. 1.) The appeal is fully briefed (Docs. 20, 24, 25), and the Court now rules.

# I.    BACKGROUND

## A.    Factual Overview

On her alleged onset date, Plaintiff was 54 years old. (Doc. 24 at 2.) She has a master's degree in Elementary Education and past relevant work as an elementary school teacher. (Doc. 16-4 at 108–10.) Plaintiff filed her social security disability claim on May 21, 2018, alleging disabilities beginning on February 15, 2017, including Meniere's disease, recurrent arrhythmias/atrial fibrillation, polyneuropathy of upper and lower extremities, migraine headaches, osteoarthritis of the right thumb status/post arthroplasty, obstructive sleep apnea, obesity, and history of rheumatoid arthritis. (Doc. 16-3 at 27, 29.) Her claim was initially denied on November 30, 2018, and upon reconsideration on April 4, 2019. (*Id.* at 27.) Plaintiff subsequently requested a hearing that was held telephonically

on July 13, 2020. (*Id.* at 27, 101–35.) On August 5, 2020, the ALJ issued a decision finding Plaintiff not disabled under the Act. (*Id.* at 27–37.) The SSA Appeals Council denied Plaintiff's request for review on December 11, 2020, and adopted the ALJ's decision as the SSA's final decision. (*Id.* at 8–13.) Following this unfavorable decision, Plaintiff filed the present appeal. (Doc. 1.)

**B.    The SS's Five-Step Evaluation Process**

To qualify for social security benefits, a claimant must show she "is under a disability." 42 U.S.C. § 423(a)(1)(E). A claimant is disabled if she suffers from a medically determinable physical or mental impairment that prevents her from engaging "in any substantial gainful activity." *Id.* § 423(d)(1)–(2). The SSA has created a five-step process for an ALJ to determine whether the claimant is disabled. *See* 20 C.F.R. § 404.1520(a)(1). Each step is potentially dispositive. *See id.* § 404.1520(a)(4).

At the first step, the ALJ determines whether the claimant is "doing substantial gainful activity." *Id.* § 404.1520(a)(4)(i). If so, the claimant is not disabled. *Id.* Substantial gainful activity is work activity that is both "substantial," involving "significant physical or mental activities," and "gainful," done "for pay or profit." *Id.* § 404.1572(a)–(b).

At the second step, the ALJ considers the medical severity of the claimant's impairments. *Id.* § 404.1520(a)(4)(ii). If the claimant does not have "a severe medically determinable physical or mental impairment," the claimant is not disabled. *Id.* A "severe impairment" is one which "significantly limits [the claimant's] physical or mental ability to do basic work activities." *Id.* § 404.1520(c). Basic work activities are "the abilities and aptitudes necessary to do most jobs." *Id.* § 404.1522(b).

At the third step, the ALJ determines whether the claimant's impairment or combination of impairments "meets or equals" an impairment listed in Appendix 1 to Subpart P of 20 C.F.R. Part 404. *Id.* § 404.1520(a)(4)(iii). If so, the claimant is disabled. *Id.* If not, before proceeding to step four, the ALJ must assess the claimant's "residual functional capacity" ("RFC"). *Id.* § 404.1520(a)(4). The RFC represents the most a claimant "can still do despite [her] limitations." *Id.* § 404.1545(a)(1). In assessing the

- 2 -

claimant's RFC, the ALJ will consider the claimant's "impairment(s), and any related symptoms, such as pain, [that] may cause physical and mental limitations that affect what [the claimant] can do in a work setting." *Id.*

At the fourth step, the ALJ uses the RFC to determine whether the claimant can still perform her "past relevant work." *Id.* § 404.1520(a)(4)(iv). The ALJ compares the claimant's RFC with the physical and mental demands of the claimant's past relevant work. *Id.* § 404.1520(f). If the claimant can still perform her past relevant work, the ALJ will find that the claimant is not disabled. *Id.* § 404.1520(a)(4)(iv).

At the fifth and final step, the ALJ determines whether—considering the claimant's RFC, age, education, and work experience—she "can make an adjustment to other work." *Id.* § 404.1520(a)(4)(v). If the ALJ finds that the claimant can make an adjustment to other work, then the claimant is not disabled. *Id.* If the ALJ finds that the claimant cannot make an adjustment to other work, then the claimant is disabled. *Id.*

**C.   The ALJ's Application of the Factors**

At the first step, the ALJ concluded that Plaintiff had not engaged in substantial gainful activity since the alleged onset date of her disability. (Doc. 16-3 at 29.)

At the second step, the ALJ determined that Plaintiff's  Meniere's disease, recurrent arrhythmias/atrial fibrillation, polyneuropathy of upper and lower extremities, migraine headaches, osteoarthritis of the right thumb status/post arthroplasty, obstructive sleep apnea, obesity, and history of rheumatoid arthritis constituted severe impairments under 20 C.F.R. § 404.1520(c). (*Id.*) The ALJ also determined that the rest of Plaintiff's alleged impairments were non-severe. (*Id.* at 29–31.)

At the third step, the ALJ determined that neither Plaintiff's impairments nor a combination of Plaintiff's impairments met or equaled the severity of one of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. (*Id.* at 31–32.) After evaluating the record, the ALJ determined Plaintiff's RFC:

> [Plaintiff] can lift and/or carry 20 pounds occasionally and 10 pounds frequently; she can stand and/or walk up to 6 hours in

1
2
3
4
5
6
7

> an 8-hour workday; and she can sit up to 8 hours in an 8-hour workday. She can occasionally stoop, kneel, crouch, crawl, and climb ramps and stairs. She can occasionally reach overhead, bilaterally, and she can frequently handle and finger, bilaterally. She can never climb ladders, ropes or scaffolds, and she must avoid excessive vibration, operational control of moving machinery, unprotected heights and hazardous machinery. She may be exposed to no more than occasional heat, no more than occasional cold weather, and no more than a moderate level of noise.

8
9

(*Id.* at 32.)

10
11
12
13
14
15
16
17
18

At the fourth step, the ALJ concluded that Plaintiff is able to perform past relevant work as an elementary school teacher because "[t]his work does not require the performance of work-related activities precluded by the claimant's [RFC]." (*Id.* at 35.) The ALJ reached this conclusion based on the testimony of a vocational expert ("VE") who testified that Plaintiff could perform the requirements of an elementary school teacher as described in the Dictionary of Occupational Titles ("DOT"). (*Id.*) The VE's testimony was based on hypotheticals asked by the ALJ based on Plaintiff's RFC. (*Id.*) Accordingly, the ALJ did not proceed to step five of the evaluation and found that Plaintiff was not disabled from the alleged onset date through August 5, 2020. (*Id.* at 35–37.)

19

## II.    LEGAL STANDARD

20
21
22
23
24
25
26
27
28

This Court may not overturn the ALJ's denial of disability benefits absent legal error or a lack of substantial evidence. *Luther v. Berryhill*, 891 F.3d 872, 875 (9th Cir. 2018). "Substantial evidence means . . . such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Revels v. Berryhill*, 874 F.3d 648, 654 (9th Cir. 2017) (quoting *Desrosiers v. Sec'y of Health & Human Servs.*, 846 F.2d 573, 576 (9th Cir. 1988)). On review, the Court "must consider the entire record as a whole, weighing both the evidence that supports and the evidence that detracts from the [ALJ's] conclusion, and may not affirm simply by isolating a specific quantum of supporting evidence." *Id.* (quoting *Garrison v. Colvin*, 759 F.3d 995, 1009 (9th Cir. 2014)). The ALJ, not this Court, draws

1  inferences, resolves conflicts in medical testimony, and determines credibility. *See*
2  *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995); *Gallant v. Heckler*, 753 F.2d 1450,
3  1453 (9th Cir. 1984). Thus, the Court must affirm even when "the evidence admits of more
4  than one rational interpretation." *Allen v. Heckler*, 749 F.2d 577, 579 (9th Cir. 1984). The
5  Court "review[s] only the reasons provided by the ALJ in the disability determination and
6  may not affirm the ALJ on a ground upon which he did not rely." *Garrison*, 759 F.3d at
7  1010.

8  **III.    DISCUSSION**

9         Plaintiff raises eight issues on appeal: (1) the ALJ improperly considered Dr.
10  Kurtin's and Dr. McCary's medical opinions; (2) the ALJ erred by not including migraine
11  headache-related limitations in Plaintiff's RFC; (3) the ALJ's assessment of Plaintiff's
12  symptom testimony is not supported by substantial evidence; (4) the ALJ improperly
13  rejected the medical opinions of Plaintiff's treating physicians, Dr. David Silberman and
14  Dr. Hemant Pandey; (5) the ALJ committed legal error when the ALJ discounted Plaintiff's
15  husband's and daughter's lay witness testimony; (6) the ALJ posed incomplete
16  hypotheticals to the VE; (7) the ALJ's conclusion that Plaintiff could perform past work as
17  an elementary school teacher is not based on substantial evidence; and (8) the Court should
18  remand for an award of benefits or a new hearing. (Doc. 20 at 2, 25.) The Court addresses
19  each in turn.

20         **A.    The ALJ's RFC Determination**

21         Under 20 C.F.R. § 404.1545(a)(2), the ALJ is required to consider all the "medically
22  determinable impairments of which [the ALJ is] aware, including [the plaintiff's]
23  medically determinable impairments that are not-severe . . . ." when assessing the RFC. 20
24  C.F.R. § 404.1545(a)(2). The court "will affirm the ALJ's determination of [the plaintiff's]
25  RFC if the ALJ applied the proper legal standard and [her] decision is supported by
26  substantial evidence." *Bayliss v. Barnhart*, 427 F.3d 1211, 1217 (9th Cir. 2005). "The ALJ
27  assesses a claimant's RFC based on all the relevant evidence in [the] case record," to
28  determine the claimant's capacity for work. *Laborin v. Berryhill*, 867 F.3d 1151, 1153 (9th

1    Cir. 2017) (quotation marks and citation omitted); *see* 20 C.F.R. §§ 404.1545(a),

2    416.945(a). The ALJ should consider a claimant's ability to meet physical and mental

3    demands, sensory requirements, and other functions. *See* 20 C.F.R. §§ 404.1545(b)–(d),

4    416.945(b)–(d). "[I]n assessing RFC, the adjudicator must consider limitations and

5    restrictions imposed by all of an individual's impairments, even those that are not severe.

6    The RFC therefore should be exactly the same regardless of whether certain impairments

7    are considered severe or not." *Buck v. Berryhill*, 869 F.3d 1040, 1049 (9th Cir. 2017)

8    (quotation marks, internal citations, and emphasis omitted). Additionally,

> The RFC assessment must contain a thorough discussion and
> analysis of the objective medical and other evidence, including
> the individual's complaints of pain and other symptoms and
> the adjudicator's personal observations, if appropriate. In other
> words, the ALJ must take the claimant's subjective experiences
> of pain into account when determining the RFC.

14   *Laborin*, 867 F.3d at 1153 (quotation marks, internal citations, and emphasis omitted). The

15   ALJ is not required to include unsubstantiated impairments in the questions posed to a

16   vocational expert. *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 886 (9th Cir. 2006) ("[I]n

17   hypotheticals posed to a vocational expert, the ALJ must only include limitations supported

18   by substantial evidence.").

19       Here, Plaintiff argues that the ALJ crafted Plaintiff's RFC without properly

20   considering Dr. Kurtin's and Dr. McCary's medical opinions and the migraine headache-

21   related evidence in the record.

22       **i.    Dr. Kurtin and Dr. McCary's Medical Opinions**

23       Plaintiff argues that, when determining Plaintiff's RFC fingering and handling

24   limitation, the ALJ erred because, despite finding Dr. Kurtin's and Dr. McCary's medical

25   opinions persuasive, she substituted her own opinion in the place of theirs. (Doc. 20 at 11–

26   12.) Specifically, Dr. Kurtin and Dr. McCary determined that Plaintiff was capable of

27   handling and fingering with the upper right extremity *occasionally*, (Doc. 16-5 at 145–48,

28   161–64.), but Plaintiff's RFC stated that "she can *frequently* handle and finger, bilaterally."

(Doc. 16-3 at 32 (emphasis added).) Plaintiff asserts that this is reversible error.  (Doc. 20 at 11–12.) The Commissioner argues that some evidence in the record supported the ALJ's RFC determination. Specifically, the Commissioner points to the ALJ noting that Plaintiff has spent three hours per day writing, typing, or handling objects; enjoys painting and crafts; and has excellent finger strength. (Doc. 24 at 16–17 (citing Doc. 16-8 at 315; Doc. 16-14 at 970; Doc. 16-15 at 1079).) Alternatively, the Commissioner argues that any error the ALJ committed was harmless because the DOT description of working as an elementary school teacher only requires occasional handling and fingering. (Doc. 24 at 17.) Plaintiff counters that failing to include the appropriate limitation in the RFC was not harmless error because it tainted the VE hypotheticals. (Doc. 25 at 9.)

The Court agrees with the Commissioner. Notwithstanding Dr. Kurtin's and Dr. McCary's persuasive medical opinions, the ALJ's RFC determination regarding Plaintiff's fingering and handling limitations was supported by substantial evidence. Typing, writing, or handling objects three hours a day; enjoying painting and other crafts; and excellent finger strength are pieces of evidence that a reasonable person could conclude support a limitation for frequent handling and fingering despite the existence of Dr. Kurtin's and Dr. McCary's persuasive medical opinions diagnosing a limitation of occasional handling and fingering. Thus, the ALJ's decision is supported by substantial evidence. *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007) ("Substantial evidence is more than a mere scintilla, but less than a preponderance. It is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." (quotations and internal citations omitted)). Because there was no error, the Court will not address the parties' arguments regarding whether the RFC determination regarding Plaintiff's fingering and handling limitations was harmless error.

### ii.    Migraine Headache-Related Limitations in Plaintiff's RFC

Plaintiff argues that it was error for the ALJ to find Plaintiff's migraines a severe impairment but fail to include migraine headache-related limitations in her RFC beyond restricting her noise exposure to "'no more than moderate level of noise.'" (Doc. 20 at 9–

10 (quoting Doc. 16-3 at 32).) Plaintiff also argues that the ALJ erred by failing to explain why additional migraine headache-related limitations were omitted from the RFC. (*Id.*) The Commissioner argues that the ALJ did explain why additional migraine headache-related limitations were omitted by highlighting that Plaintiff's migraines were treated with medication and exercises and improved by 75%. (Doc. 24 at 8–9.)

The ALJ's decision regarding Plaintiff's migraine headache-related limitations was supported by substantial evidence. The ALJ specifically highlighted in her decision that Plaintiff's headaches were treated "with Tylenol, prescribed medication and neck exercises" and "[Plaintiff's] treating neurologist indicate[d] 75% success from" that treatment regimen. (Doc. 16-3 at 33.) This qualifies as substantial evidence in support of the ALJ's decision to only include the "no more than moderate level of noise" limitation in Plaintiff's RFC because a reasonable person could weigh the evidence before the ALJ and reach the same conclusion. *Orn*, 495 F.3d at 630.

### B.    Plaintiff's Symptom Testimony

Plaintiff argues that the ALJ discredited her symptom testimony without providing specific, clear, and convincing reasons for doing so. (Doc. 20 at 12.) Specifically, Plaintiff asserts that the ALJ improperly relied on Plaintiff's daily activities when discrediting her symptom testimony because the ALJ did not accurately characterize the evidence in the record. (*Id.* at 13–18.) The Commissioner argues that the ALJ properly assessed Plaintiff's symptom testimony and that the ALJ's decision was supported by substantial evidence. (Doc. 24 at 4–9.) Plaintiff counters that it was error for the ALJ to single out periods of temporary well-being when Plaintiff's Meniere's disease waxes and wanes in severity. (Doc. 25 at 9–10.) Plaintiff also asserts that the daily activities on which the ALJ relied when discrediting her symptom testimony do not translate to the workplace. (*Id.* at 9–11.)

The Ninth Circuit has established a two-step analysis for an ALJ to determine whether to credit a claimant's subjective symptom testimony. "First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms

alleged." *Trevizo v. Berryhill*, 871 F.3d 664, 678 (9th Cir. 2017) (quoting *Garrison*, 759 F.3d at 1014–15). If the claimant presents such evidence, the ALJ then evaluates the claimant's subjective complaints. *See id.* "In evaluating the credibility of pain testimony after a claimant produces objective medical evidence of an underlying impairment, an ALJ may not reject a claimant's subjective complaints based solely on a lack of medical evidence to fully corroborate the alleged severity of pain." *Burch v. Barnhart*, 400 F.3d 676, 680 (9th Cir. 2005). Instead, an ALJ must provide "specific, clear, and convincing reasons" for doing so. *Burrell v. Colvin*, 775 F.3d 1133, 1138 (9th Cir. 2014).

"Although an ALJ 'cannot be required to believe every allegation of disabling pain,' the ALJ cannot reject testimony of pain without making findings sufficiently specific to permit the reviewing court to conclude that the ALJ did not arbitrarily discredit the claimant's testimony." *Orteza v. Shalala*, 50 F.3d 748, 750 (9th Cir. 1995) (quoting *Bunnell v. Sullivan*, 947 F.2d 341, 345–46 (9th Cir. 1991) (en banc) and *Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989)). An ALJ's credibility determination "must rely either on reasons unrelated to the subjective testimony (e.g., reputation for dishonesty), on conflicts between her testimony and her own conduct, or on internal contradictions in that testimony." *Light v. Soc. Sec. Admin.*, 119 F.3d 789, 792 (9th Cir. 1997). In analyzing whether to discount a claimant's testimony, "[t]he ALJ must identify the testimony that was not credible and specify 'what evidence undermines the claimant's complaints.'" *Treichler v. Comm'r Soc. Sec. Admin.*, 775 F.3d 1090, 1103 (9th Cir. 2014) (quoting *Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998)). The ALJ's findings "must contain specific reasons for the weight given to the individual's symptoms, be consistent with and supported by the evidence, and be clearly articulated so the individual and any subsequent reviewer can assess how the adjudicator evaluated the individual's symptoms." SSR 16-3p, 82 Fed. Reg. 49462, 49467 (Oct. 25, 2017). If the ALJ's path cannot "reasonably be discerned," the ALJ's decision must be reversed. *Treichler*, 775 F.3d at 1103. Factors that the adjudicator may consider when making such credibility determinations include the nature, location, onset, duration, frequency, radiation, and intensity of any pain, precipitating and aggravating factors (e.g.,

movement, activity, environmental conditions), type, dosage, effectiveness, and adverse side-effects of any pain medication, treatment, other than medication, for relief of pain, functional restrictions, and the claimant's daily activities. *Bunnell*, 947 F.2d at 346 (citing SSR 88–13, 1988 WL 236011 (July 20, 1988)).

Here, at the first step, "[b]ased on the record as a whole," the ALJ determined that "[Plaintiff's] noted impairments could reasonably be expected to cause a number of symptoms she has alleged, and there is [a] reasonable nexus between her impairments and her alleged symptoms." (Doc. 16-3 at 33.) But, at the second step, the ALJ determined that "even granting [Plaintiff] the benefit of the doubt, I find [Plaintiff's] statements concerning the intensity, persistence and limiting effects of her symptoms are not entirely supported by the available evidence as a whole." (*Id.* at 34.) The ALJ went on to explain that Plaintiff's subjective complaints do not comport with her daily activities:

> The [Plaintiff] testified that she drives to the grocery store, goes to Bible Study on Tuesday evenings, picks up around the house, does laundry, spends a couple of hours at a time on the computer, prepares meals daily, does crafts and continues to camp and attend car shows with her husband. She stated she can spend about two hours at a car show, but she is bothered by the noise and she also has difficulty in wide open spaces where there is nothing to hold onto. She stated she attends church regularly and has previously reported her symptoms do not interfere with her ability to participate fully in church activities. She also reports she goes out to eat daily with friends and records of treatment reference her using a computer for typing a children's book during the period under consideration.

(*Id.* (internal citations omitted).)

The Court finds that the ALJ's conclusion is adequately supported by the record. (*Id.* (citing Doc. 16-8 at 309; Doc. 16-9 at 383).) The Court also finds that this evidence provides specific, clear, and convincing reasons for discounting Plaintiff's symptom testimony. Plaintiff alleged that she suffered from dizzy spells, vertigo, brain fog, confusion, difficulty with concentration, headaches, fatigue, sensitivity to sounds, visual

- 10 -

disturbances, anxiety, and associated functional limitations. (Doc. 16-3 at 33.) But the ALJ observed, and the Court agrees, that Plaintiff participated in a number of daily living activities that contradict the alleged severity of Plaintiff's symptoms. (*Id.* at 34.) The record contains a plethora of evidence of daily living activities that a reasonable person could conclude conflicts with Plaintiff's symptom testimony. Thus, the ALJ's decision to discount Plaintiff's symptom testimony is supported by substantial evidence. Furthermore, Plaintiff's assertion that this Court should reverse the ALJ's opinion based on the ALJ's characterization of the facts of this case is inappropriate. Such findings are factual determinations solely within the ALJ's responsibility and not for this Court to second guess. *Andrews*, 53 F.3d at 1039.

### C.   Plaintiff's Treating Physicians' Opinions

Plaintiff argues that the ALJ did not give sufficient justification for rejecting Dr. Silberman's and Dr. Pandey's medical opinions because the ALJ did not provide specific and legitimate reasons. (Doc. 20 at 18–19.) In the alternative, Plaintiff argues that the ALJ did not give sufficient justification because the ALJ failed to adequately discuss the consistency and supportability of Dr. Silberman's and Dr. Pandey's medical opinions. (*Id.* at 19–23.) Plaintiff also asserts that the ALJ failed to mention both doctors' relationship with Plaintiff, their specializations, or any other factors listed in 20 C.F.R. § 404.1520(c)(5). (*Id.* at 23.) The Commissioner argues that the ALJ reasonably concluded that both doctors' medical opinions were unpersuasive. (Doc. 24 at 11–14.)

Both doctors filled out practically identical Meniere's Disease medical source statements. (Doc. 16-16 at 1278–81; Doc. 16-17 at 1282–85.) Both doctors identified vertigo, nausea/vomiting, malaise, photosensitivity, sensitivity to noise, visual disturbances, mood changes, mental confusion/inability to concentrate, and fatigue/exhaustion as Plaintiff's symptoms associated with her Meniere's attacks. (Doc. 16-16 at 1279; Doc. 16-17 at 1283.) Both doctors also opined that Plaintiff suffers about five attacks per month, that each attack lasts between two or three days, that Plaintiff has no way of predicting when an attack will occur, and that Plaintiff suffers from confusion,

exhaustion, and a severe headache for up to two days after an attack. (Doc. 16-16 at 1279–80; Doc. 16-17 at 1283–84.) Both statements also assert that working at a computer and even low stress work become impossible when Plaintiff is suffering from an attack. (Doc. 16-16 at 1280; Doc. 16-17 at 1284.) Both statements conclude that they expect Plaintiff to take unscheduled breaks from work 5–8 days a month with each break lasting "days," to be off task for 20% of the work day, and to be absent from work "more than four days per month." (Doc. 16-16 at 1280–81; Doc. 16-17 at 1284–85.) Finally, both statements identify walking in large spaces, "hypercussis" (smoke alarms or in gyms and smaller locations depending on the furnishing), turning her head quickly, making snap decisions, and extended time on a computer as limitations "that would affect [Plaintiff's] ability to work at a regular job on a sustained basis." (Doc. 16-16 at 1281; Doc. 16-17 at 1285.)

The ALJ addressed both medical opinions as follows:

> I find the identical opinions provided by treating specialists David Silberman, M.D., and Hemant Pandey, M.D., unpersuasive, as they are inconsistent with the evidence as a whole. The [Plaintiff's] previously referenced active lifestyle contradicts their stated opinions that the claimant would be off task 20% of the time and miss more than 4 days of work per month due to her impairments and symptoms. There is also some question raised by these two physicians' opinions being identical, appearing to have possibly been completed by the claimant and merely signed by the physicians.

(Doc. 16-3 at 34 (internal citations omitted).)

The law previously distinguished between the opinions of treating physicians, examining physicians, and non-examining physicians. *See Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995). This distinction was known as the "treating physician rule." *See Edlund v. Massanari*, 253 F.3d 1152, 1158 (9th Cir. 2001), *as amended on reh'g* (Aug. 9, 2001). "In March of 2017, [t]he Social Security Administration amended their regulations to abrogate the treating physician rule, among other changes." *Alonzo v. Comm'r of Soc. Sec. Admin.*, No. CV-18-08317-PCT-JZB, 2020 WL 1000024, at *3 (D. Ariz. Mar. 2, 2020)

(citing *Revisions to Rules Regarding the Evaluation of Medical Evidence*, 82 Fed. Reg. 5844-01, 2017 WL 168819, at *5852–57 (Jan. 18, 2017)). The new regulations apply to claims filed on or after March 27, 2017. 20 C.F.R. §§ 404.1520c, 416.920c. The new regulations provide that the ALJ "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from your medical sources." *Id.*

Furthermore, the ALJ will consider all medical opinions according to several enumerated factors, including whether the opinion is supported by objective medical evidence and whether the opinion is consistent with the evidence from other sources. *Alonzo*, 2020 WL 1000024, at *3. Contrary to Plaintiff's assertions that the ALJ must explain how she weighed factors under § 404.1520c(c)(3)–(5) (Doc. 20 at 23), under the new regulations, the ALJ must consider and explain how well the medical evidence supports the medical opinion and how consistent the medical opinion is with the record, and may, but is not required to, explain how the other factors under § 404.1520c(c)(3)–(5) are considered. 20 C.F.R. § 404.1520c(b)(3).

"When the evidence before the ALJ is subject to more than one rational interpretation, [the Court] must defer to the ALJ's conclusion." *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1198 (9th Cir. 2004). This is so because "[t]he [ALJ] and not the reviewing court must resolve conflicts in evidence, and if the evidence can support either outcome, the court may not substitute its judgment for that of the ALJ." *Matney v. Sullivan*, 981 F.2d 1016, 1019 (9th Cir. 1992) (citations omitted).

Although it was debated for years, recently, the Ninth Circuit definitively ruled that the "specific and legitimate" standard is not the law in Social Security cases where the revised regulations apply. *Woods v. Kijakazi*, 32 F.4th 785, 792 (9th Cir. 2022). Specifically, the Ninth Circuit in *Woods* determined that

> [t]he revised social security regulations are clearly irreconcilable with our caselaw according special deference to the opinions of treating and examining physicians on account

of their relationship with the claimant. Our requirement that ALJs provide 'specific and legitimate reasons' for rejecting a treating or examining doctor's opinion, which stems from the special weight given to such opinions is likewise incompatible with the revised regulations. Insisting that ALJs provide a more robust explanation when discrediting evidence from certain sources necessarily favors the evidence from those sources— contrary to the revised regulations.

*Id.* (quotations and internal citations omitted). Thus, an ALJ need not give specific and legitimate reasons for not crediting the medical opinion of a treating physician. *Id.* at 791.

Substantial evidence supports the ALJ's determination that Dr. Silberman's and Dr. Pandey's opinions were inconsistent with Plaintiff's daily activities. (Doc. 16-3 at 34); *see Trevizo*, 871 F.3d at 675 ("The ALJ can meet this burden by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings.") (quoting *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989)). Using the standard set forth at 20 C.F.R. § 404.1520c, the ALJ determined that Plaintiff's active social life—including weekly Bible studies, housework, time on the computer, meal preparation, car show attendance, weekly church attendance, and daily meals out with friends—is inconsistent with the restrictions articulated in Dr. Silberman's and Dr. Pandey's opinions. (*Id.* at 34.) The Court finds that a reasonable person examining the evidence could draw the same conclusion. The fact that Plaintiff's daily activities could be interpreted differently has no effect on this Court's ruling. *See Andrews*, 53 F.3d at 1039–40 ("The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and for resolving ambiguities. We must uphold the ALJ's decision where the evidence is susceptible to more than one rational interpretation.") (citations omitted). Thus, the ALJ did not err by rejecting Dr. Silberman's and Dr. Pandey's medical opinions.

### D.   Lay Witness Testimony

Plaintiff argues that the ALJ improperly rejected the sworn statements provided by Plaintiff's husband and daughter. (Doc. 20 at 7–8.) The Commissioner argues that the ALJ

1   did not err in her analysis of the sworn statements. (Doc. 24 at 14–15.) Alternatively, if the
2   ALJ did err, the Commissioner argues that any error was harmless because the ALJ had
3   already considered and discussed similar findings from Plaintiff's symptom testimony and
4   found that Plaintiff's symptoms were not consistent with her activities. (*Id.* at 15–16.)
5   Plaintiff's reply did not address harmless error. (Doc. 25 at 4–6.)

6        Regarding Plaintiff's husband's and daughter's statements, the ALJ stated "I have
7   noted and considered nonmedical opinions in the record as well." (Doc. 16-3 at 35 (citing
8   Doc. 16-5 at 144–45; Doc. 16-8 at 295–302, 366–68).) In a footnote attached to that
9   statement, the ALJ noted, "[t]he regulations provide for new rules in the evaluation of
10  medical evidence for claims filed on or after March 27, 2017. Among the changes made
11  by these rules, I need not articulate analysis of nonmedical opinions." (*Id.*)

12       "Competent lay witness testimony cannot be disregarded without comment, and in
13  order to discount competent lay witness testimony, the ALJ must give reasons that are
14  germane to each witness." *Rounds v. Comm'r Soc. Sec. Admin.*, 807 F.3d 996, 1007 (9th
15  Cir. 2015) (internal quotation marks and alterations omitted) (citing *Molina v. Astrue*, 674
16  F.3d 1104, 1114 (9th Cir. 2012)). The ALJ, however, need not "discuss every witness's
17  testimony on a [sic] individualized, witness-by-witness basis. Rather, if the ALJ gives
18  germane reasons for rejecting testimony by one witness, the ALJ need only point to those
19  reasons when rejecting similar testimony by a different witness." *Molina*, 674 F.3d at 1114.

20       Even if the ALJ's decision to consider but not credit Plaintiff's husband's and
21  daughter's statements was error, the Court concludes that any error was harmless. *See*
22  *Marsh v. Colvin*, 792 F.3d 1170, 1172 (9th Cir. 2015); *Johnson v. Astrue*, No. CV-11-8121-
23  PHX-JAT, 2012 WL 3108838, at *11 (D. Ariz. July 31, 2012) (applying harmless error
24  review to an ALJ's failure to credit competent lay witness testimony). The symptoms
25  described in Plaintiff's husband's and daughter's statements are consistent with Plaintiff's
26  symptom testimony, which the ALJ properly discredited because it conflicted with
27  Plaintiff's daily activities. *Supra* Section III.B. At best, the lay witness testimony merely
28  corroborates Plaintiff's discredited symptom testimony. Thus, the Court finds that if the

ALJ's failure to credit Plaintiff's husband's and daughter's statements was error, properly considering the evidence would not have changed the ALJ's disability determination. Therefore, if the ALJ erred, it was harmless. *See Marsh*, 792 F.3d at 1173 ("ALJ errors in social security cases are harmless if they are 'inconsequential to the ultimate nondisability determination.'" (quoting *Stout v. Comm'r Soc. Sec. Admin.*, 454 F.3d 1050, 1056 (9th Cir. 2006))).

### E.    The ALJ's Hypotheticals to the VE

Plaintiff argues that the ALJ failed to pose complete hypotheticals to the VE because the ALJ's hypotheticals were based on Plaintiff's improperly determined RFC. (Doc. 20 at 24.) This Court has already decided that the ALJ properly determined Plaintiff's RFC. *See supra* Section III.A–D. Thus, the Court finds that the ALJ posed complete hypotheticals to the VE.

### F.    The ALJ's Step Four Finding

Plaintiff argues that the ALJ erred in finding that Plaintiff could perform her past work as an elementary school teacher because she failed to resolve a conflict between the VE testimony, the DOT, and her RFC. (Doc. 20 at 5–7.) Specifically, Plaintiff first asserts that the VE testified that working as an elementary school teacher would violate Plaintiff's RFC because an elementary school teacher could possibly experience sounds louder than moderate noise. (*Id.*) Second, Plaintiff asserts that the ALJ never resolved the fact that the VE's testimony regarding the amount of noise to which an elementary school teacher is exposed contradicts the DOT. (*Id.*) The Commissioner argues that the ALJ did not err in determining that Plaintiff could perform her past work as an elementary school teacher because there was no conflict between the DOT and the VE testimony. (Doc. 24 at 17–18.)

SSR 00–4p provides that the ALJ has an affirmative duty to identify and obtain a reasonable explanation for any conflicts between the VE testimony and the DOT. 2000 WL 1898704 (Dec. 4, 2000). First, the ALJ must determine whether a conflict exists. *Massachi v. Astrue*, 486 F.3d 1149, 1153 (9th Cir. 2007). If it does, the ALJ must elicit an explanation and then determine if the VE's explanation for the conflict is reasonable and whether a

basis exists for relying on the expert rather than the DOT. *Id.*

In her decision, the ALJ held:

> I have determined that the vocational expert's testimony is consistent with the information contained in the Dictionary of Occupational Titles and the Selected Characteristics of Occupations. For issues not addressed by either of these publications, the vocational expert testified that she supplemented her testimony with her professional work experience in the field. Furthermore, the claimant's representative did not object to the qualifications of the vocational expert or to the testimony provided at the administrative hearing.

(Doc. 16-3 at 35 (citing Doc. 16-8 at 371–73).)

The portion of the hearing held by the ALJ on which Plaintiff's argument that the VE testimony, Plaintiff's RFC, and the DOT conflicted was Plaintiff's attorney's questioning of the VE:

> Q I did have a question about hypothetical one. I was concerned about the aspect of the hypothetical that included no more than moderate noise exposure. And I'm wondering about the elementary school teacher, as far as exposure to classroom noise. Potentially children being noisy. Potentially children screaming, crying, and potentially fire drills or alarms. Would any of those include an excess to moderate noise?
> A Well that's possible, on a rare occasion. But the DOT lists the teacher, elementary, as moderate noise level.
> Q Okay. It's possible on occasion. So --
> A I said rare. A rare occasion.
> Q On a rare occasion. Okay. But the aspect of the hypothetical was no more than moderate. So, would that be problematic?
> A I'm interpreting this as the DOT does, and the DOT lists it as moderate.
> Q And do you agree with the DOT?
> A I explained ma'am, there could be rare occasions where noise could exceed moderate.
> Q Okay. And during fire alarms and fire drills or emergency events, would the teacher be in charge of child safety?

A Yes.

Q Okay. So, if the excessive noise caused by a fire drill or alarm impeded the teacher's ability to concentrate and focus during times where they were in charge of the child's safety. Would that be problematic as far as maintaining that type of work?

A Yes, if that occurs regularly, yes.

Q Okay. I just want to understand your testimony. So, if it occurs regularly -- well, it seems though we don't know how often an emergency is going to happen. So, if it happens, it happens, right? And if the teacher is in charge of a child's safety and they have to be responsible for the children during that emergency. I mean, that seems, you know, like a cut and dry type of a situation. Would you agree with that?

A Right, yes.

. . .

ALJ: All right. Ms. Smidt, has your testimony been consistent with the [DOT] and its companion publication?

VE: It has judge . . . .

(Doc. 16-4 at 132–35.)

Plaintiff's arguments fail on two fronts. First, the VE testimony did not conflict with the DOT. The VE never said that someone with Plaintiff's limitations could not work as an elementary school teacher. The VE testified that she interpreted work as an elementary school teacher "as the DOT does, and the DOT lists it as moderate [noise exposure]." (*Id.* at 133.) The VE went on to explain that these rare occurrences would only be problematic for someone with Plaintiff's limitations "if th[ey] occur[ed] regularly," which, axiomatically, they do not. (*Id.*) The ALJ's follow-up question, "has your testimony been consistent with the [DOT] and its companion publication," and the VE's answer, "[i]t has judge," reinforces the ALJ's decision that there was no conflict between the VE's testimony and the DOT. (*Id.* at 135.) Therefore, the Court finds that there is substantial evidence to support the ALJ's decision that the VE testimony and DOT did not conflict.

Second, even if the VE's testimony did conflict with the DOT, the ALJ correctly inquired into any apparent conflicts and the VE responded that none existed. (Doc. 16-4 at 134–35.) Consequently, the issue is whether the conflict was apparent such that the ALJ

1  should have been aware of the unresolved conflict between the VE evidence and the DOT.

2  *Massachi*, 486 F.3d at 1153. The Court is not convinced that the ALJ erred by failing to

3  elicit an explanation from the VE regarding the alleged conflict between the VE's

4  testimony and the DOT. Plaintiff's counsel's questions to the VE were either (i) answered

5  with the VE affirming the DOT standard or (ii) amorphous and compound such that it is

6  unclear to which portion of the question the VE was responding and whether the VE's

7  response conflicted with the DOT. (Doc. 16-4 at 132–34.) Thus, the Court finds that if

8  there was a conflict, it was not apparent enough to trigger the affirmative duty set forth in

9  SSR 00-4p. Therefore, the ALJ did not err in making her step four finding.

10  **G.     Further Proceedings**

11  Finally, Plaintiff requests a remand for further proceedings. (Doc. 20 at 25; Doc. 25

12  at 4, 6, 8.) But the Court is affirming the ALJ's decision; therefore, the Court denies

13  Plaintiff's request for a remand without considering the credit-as-true doctrine. *See Leon*

14  *v. Berryhill*, 880 F.3d 1041, 1047 (9th Cir. 2017), *as amended* (Jan. 25, 2018) (A direct

15  award of benefits is proper "only when the record clearly contradicted an ALJ's conclusory

16  findings and no substantial evidence within the record supported the reasons provided by

17  the ALJ for denial of benefits.").

18  **IV.   CONCLUSION**

19  Accordingly,

20  **IT IS ORDERED** that the ALJ's decision is **AFFIRMED**.

21  **IT IS FURTHER ORDERED** that the Clerk of Court shall enter judgment

22  accordingly.

23  Dated this 21st day of July, 2022.

24

25

26

27  James A. Teilborg
    Senior United States District Judge

28